IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

Paul A. Branch                                                                                        Plaintiff

v.                                      No. 4:14-CV–63-KGB-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                                        Defendant

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Kristine G. Baker.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Baker may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Paul A. Branch seeks judicial review of the denial of his last application for disability insurance benefits (DIB).[3] Branch last worked in September 2011 as a mechanic for an agricultural equipment business.[4] He maintains he stopped working due to a ruptured disc in his back, two bulging discs, arthritis, and headaches.[5]

**The Commissioner's decision**. After considering the application, the ALJ determined Branch has severe impairments — degenerative disc disease in the lower spine and osteoarthritis in the left hip[6] — but he can do some sedentary work.[7] Because a vocational expert identified available sedentary work, the ALJ determined Branch is not disabled and denied the application.[8]

After the Appeals Council denied review,[9] the ALJ's decision became the

---

[3]SSA record at p. 149 (applying for DIB on Nov. 8, 2011 and alleging disability beginning Sept. 25, 2011). The record indicates Branch has applied for disability benefits six times. *See id*. at p. 151 (reflecting five prior applications).

[4]*Id*. at pp. 34 & 196.

[5]*Id*. at p. 195.

[6]*Id*. at p. 16.

[7]*Id*. at p. 17.

[8]*Id*. at p. 23.

[9]*Id*. at p. 1.

Commissioner's final decision for the purpose of judicial review.[10] Branch filed this case to challenge the decision.[11] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Branch's allegations**. Branch challenges the determination that he can do some sedentary work. He contends the ALJ erred in evaluating his credibility and in considering the medical opinion evidence. For these reasons, he maintains substantial evidence does not support the ALJ's decision.[13]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Branch can do some

---

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[13]Docket entry # 10.

sedentary work.[14] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[15] Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[16] The ALJ reduced sedentary work by requiring occasional climbing, balancing, stooping, kneeling, climbing, crouching, and crawling.[17] The court must determine whether a reasonable mind would accept the evidence as adequate to show Branch can work within these parameters.

**Branch can work within the ALJ's parameters**. A reasonable mind would accept the evidence as adequate because the medical evidence shows no serious functional limitation preventing sedentary work and because a vocational expert identified available work. When asked why he applied for DIB, Branch identified back pain.[18] He attributed numerous limitations to back pain, including sitting, walking, and

---

[14]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[15]20 C.F.R. §§ 404.1567(a).

[16]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[17]SSA record at p. 17.

[18]*Id*. at p. 35.

standing.[19]

Branch's allegations are not enough to prove he is disabled because a determination of disability must be supported by medical evidence.[20] The ALJ followed the required two-step process and considered the required factors to evaluate Branch's allegations,[21] so the dispositive question is whether a reasonable mind would accept the evidence as adequate to support the decision.

**Diagnostic imaging of the back shows no reason for disabling pain**.  Branch based his claim, in significant part, on a ruptured disc and two bulging discs in the spine.[22]  Diagnostic imaging shows two disc bulges, but no ruptured disc.  Specifically, the imaging shows a mild disc bulge at level L5/S1 with mild, right more than left, facet degeneration without significant canal or neural foramen narrowing; minimal degenerative disc bulge at level L2/3 without significant canal or neural foramen narrowing; and mild ligamentum flavum hypertrophy and minimal facet degeneration

---

[19]*Id*. at pp. 203-04.

[20]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability …; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment … which could reasonably be expected to produce the pain or other symptoms alleged and which … would lead to a conclusion that the individual is under a disability.").

[21]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[22]SSA record at pp. 195 & 204.

at L4/5.[23]  Narrowing of the spinal canal or neural foramen, ligamentum flavum hypertrophy, and facet degeneration can cause some pain, numbness, and functional limitation, but the descriptors "mild," "without significant," and "minimal" suggest no cause for disabling symptoms.  Subsequent imaging conforms vertebral  body heights and intervertebral disc spaces are fairly well preserved.[24]  A reasonable would accept the imaging of the back as adequate to support the determination that Branch can do sedentary work.

**The source of more significant pain is likely the left hip**.  Diagnostic imaging of the left hip shows a CAM type femoral acetabular impingement.[25]  This condition occurs when the hip bones are abnormally shaped, causing the hip bones to rub against each other and damage the joint.[26]  Patients with a CAM type femoral acetabular impingement often complain about low back pain.  It can cause a limp and prevent prolonged walking.  Over time, bone overgrowth may cause the hip bones to hit against each other, sometimes tearing the labrum and causing arthritic changes in the cartilage.

---

[23]*Id*. at pp. 259-60.

[24]*Id*. at p. 269.

[25]*Id*. at p. 277.

[26]*See* Geoffrey S. Kuhlman & Benjamin G. Domb, *Hip Impingement: Identifying & Treating a Common Cause of Hip Pain*, Am Fam Physician 1429-34 (Dec. 15, 2009; Am. Academy of Orthopaedic Surgeons, *Femoroacetabular Impingement*, available at http://orthoinfo.aaos.org/topic.cfm?topic=A00571.

The presence of a CAM type femoral acetabular impingement and a labral tear can prevent prolonged sitting.

The imaging supports Branch's report about difficulty walking distances. It also explains his limp.[27] Importantly, imaging shows no lateral tear or erosive arthritic changes. Thus, medical evidence shows nothing preventing sitting to do sedentary work. A reasonable would accept the imaging of the left hip as adequate to support the determination that Branch can do sedentary work.

**Branch's medical opinions are unsupported**. Branch relies on two medical opinions: one by his treating chiropractor and the other by the agency examiner. The chiropractor reported disabling limitations.[28] The agency examiner reported severe limitations throughout the whole body.[29] In contrast, the agency medical expert opined that Branch can do sedentary work with postural limitations.[30] The medical opinions created a conflict in the medical opinion evidence.

An ALJ must resolve conflicts among the opinions of various treating and examining physicians to determine a claimant's ability to work. "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the

---

[27]SSA record at pp. 265 & 289.

[28]*Id*. at pp. 255, 301 & 305.

[29]*Id*. at p. 266.

[30]*Id*. at p. 278-85.

government, if they are inconsistent with the record as a whole."[31] Although Branch complains about the greater weight given the medical expert's opinion, the ALJ correctly recognized the opinions of chiropractor and the agency examiner are more limiting than the medical evidence supports.[32] Both providers relied on degenerative changes in the spine, but diagnostic imaging shows mild or minimal changes. Both relied on sacroiliac joint pain, but imaging shows the problem lies in the hip joint. Neither provider had the advantage of the imaging of the left hip.

In contrast, the agency medical expert reviewed Branch's treatment records — there aren't many — and the imaging of the back and left hip. The agency medical expert had the advantage of all "the medical signs and laboratory findings which show that [Branch has] a medical impairment(s),"[33] placing him in good position to determine whether Branch's impairment "could reasonably be expected to produce the pain or other symptoms alleged."[34] The agency medical expert based his opinion on

---

[31] *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

[32] SSA record at pp. 20-21.

[33] 42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability").

[34] *Id.*

degenerative changes in the spine and left hip, and Branch's treatment history.

The treatment history is probative of Branch's claim because, prior to applying for DIB, Branch sought only chiropractic care. After applying, he saw his chiropractor six more times.[35] He also saw a primary care provider for an ear infection, dizzy spells, and medication refills.[36] He sought emergency room care for kidney stones.[37] The treatment history suggests no disabling pain.[38] A reasonable mind would accept the agency medical expert's opinion and Branch's treatment history as adequate to support the ALJ's resolution of the conflict in the medical opinion evidence.

**Vocational evidence supports the ALJ's decision**. The ALJ asked a vocational expert about sedentary work for a person with Branch's limitations. The vocational expert identified assembly production work like bench final assembler and machine

---

[35]SSA record at pp. 289-90.

[36]*Id*. at pp. 237, 239 & 292.

[37]*Id*. at p. 320.

[38]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment undermined claimant's claim of disabling back pain); *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

tenders like glass frame polisher as representative work.[39] The vocational expert's response shows work exists that Branch can do, regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[40] Because such work exists, Branch is not disabled under social security law.

## Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to support the decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Branch's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 26th day of February, 2015.

_____
United States Magistrate Judge

---

[39] SSA record at pp. 43-44.

[40] 42 U.S.C. § 1382c(a)(3)(B) (defining "disability" under social security law).